UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JESSICA WEBSTER o/b/o JVMH, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. 4:19-cv-1784-NAB |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the appeal of J.V.M.H, Jessica Webster's daughter ("Plaintiff"), regarding the denial of supplemental security income ("SSI") under the Social Security Act. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 9.) The Court has reviewed the parties' briefs and the entire administrative record. Because the Administrative Law Judge ("ALJ") did not provide sufficient reasoning for rejecting a treating opinion, the Court will reverse the Commissioner's decision and remand for further proceedings.

**I.  Background**

  **A.  Procedural History**

Plaintiff applied for SSI in March 2016. (Tr. 363-68). Her application was denied initially. (Tr. 291-96). She requested a hearing before an ALJ in August 2016. (Tr. 300-02). After a hearing,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the ALJ issued an unfavorable decision on June 25, 2018. (Tr. 218-32). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council (Tr. 359-62), but the Appeals Council declined to review the case on April 19, 2019. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

**B.      Hearing before the ALJ**

At the administrative hearing held on December 20, 2017, Plaintiff's mother testified as follows. Plaintiff's mother testified that she has a number of diagnoses, and sees a therapist, church therapist, counselor, and psychiatrist. (Tr. 243). Dr. Naseer is her psychiatrist. *Id.* Plaintiff is on several medications, which help to an extent but she "still has her days." (Tr. 245). Her symptoms would be worse without medication but still has some days with symptoms. (Tr. 245). Plaintiff has "explosive" anger issues and will destroy or physically hurt herself or others if she does not get her way. (Tr. 245). She cannot pay attention in class and cannot function in school. (Tr. 246). She has a problem with stealing and has a juvenile officer and has tendencies to lie a lot. (Tr. 246). A caseworker has been visiting for almost five years and Plaintiff has been in therapy since she was six years old. (Tr. 247). There has been progress in Plaintiff's behavior somewhat, but then she will backlash and it goes right back to the same way. (Tr. 248). Plaintiff has had several in-patient hospitalizations. Plaintiff's school wanted to hold her back a grade, but her mother did not want Plaintiff to be in the same grade as her younger sister for fear of temperamental reasons. (Tr. 252-53). A long-term inpatient stay has been discussed as a possibility if Plaintiff does not "straighten up." (Tr. 253). Plaintiff was in fourth grade but was at a second-grade learning level. (Tr. 269). Plaintiff does not take the time to concentrate and read, and her teachers say Plaintiff is

capable of doing her work because she does not have the concentration. (Tr. 269). The school still thinks that Plaintiff needs specialized instruction. (Tr. 270).

Plaintiff's mother states that Plaintiff is not one who wants to pay attention, but since Plaintiff is receiving more Individualized Education Plan ("IEP") time in school, she seems to be doing better. (Tr. 254). Plaintiff was previously in IEP all day for a month, totaling 2,200 minutes. (Tr. 256). She was put in that IEP because she continuously stole from her teachers and peers. (Tr. 257). Plaintiff's mother testified that Plaintiff has a problem paying attention to learn and that her concentration is interfering with her learning. (Tr. 260). Plaintiff sometimes does not cooperate with the classroom and the teacher, and her behavior interferes with learning. (Tr. 260). Plaintiff also has to be reminded in regard to attending and completing tasks, she needs a refresher and to be told numerous times to finish something. (Tr. 260-61). Plaintiff has to be more carefully and constantly supervised. (Tr. 261). Her mother testified that if Plaintiff is kept seriously and honestly supervised, she does not have many behavior issues. (Tr. 262).

**II.      Standard of Review**

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it sufficient to support a conclusion." *Id*. In evaluating the substantiality of the evidence, the Court must consider evidence which supports the ALJ's decision as well as any evidence which fairly detracts from the decision. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Where substantial evidence supports the ALJ's decision, the decision may not be reversed merely because substantial evidence may support a different outcome. *Id.; Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

A claimant under the age of eighteen is considered disabled and eligible for SSI under the Social Security Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c (a)(3)(C)(I).

The Commissioner is required to undergo a three-step sequential evaluation process when determining whether a child is entitled to SSI benefits. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then determine whether the child's impairment, or combination of impairments, is severe. Finally, if the child's impairment is severe, the Commissioner must determine whether such impairment meets, medically equals, or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations (the Listings). 20 C.F.R. § 416.924(a); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 647 (8th Cir. 2004). If the impairment meets or medically equals a listed impairment, the child is disabled. *Garrett*, 366 F.3d at 647. If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment functionally equals a listed impairment. 20 C.F.R. § 416.926a. If this analysis shows the child not to have an impairment that is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. *Wigfall v. Berryhill*, 244 F. Supp. 3d 952, 956 (E.D. Mo. 2017).

To qualify as functionally equal to a listed impairment, a child's condition must result in an "extreme" limitation of functioning in one domain of functioning, or "marked" limitations in two domains of functioning. 20 C.F.R. § 416.926a(a). The domains are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six

4

domains used by the Commissioner in making such a determination are: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Oneself; and 6) Health and Physical Well-Being. *Id*. If this analysis shows the child not to have an impairment that is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. *Oberts o/b/o Oberts v. Halter*, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001). The Commissioner's findings are conclusive upon this Court if they are supported by substantial evidence. 42 U.S.C. § 405(g).

> A child-claimant has a "marked" limitation in a domain when her
> 
> impairment(s) interferes seriously with [her] ability to independently initiate, sustain, or complete activities. [Her] day-to-day functioning may be seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i). Not every activity in a domain must be markedly limited in order for the child's functioning in the domain as a whole to be considered so. *Id*. A marked limitation is also defined as "the equivalent of the functioning" expected to be found "on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."[2] *Id*.

A child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). In determining whether a limitation on a child-claimant's functioning may be marked or extreme, the Commissioner must review all the evidence of record and "compare [the child's] functioning to the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1); *see also* 20 C.F.R. § 416.926a(b) (in determining child-

---

[2] Scores that are three or more standard deviations below the mean indicate an "extreme" limitation. *Id*. § 416.926a(e)(3)(i).

claimant's functioning, Commissioner looks "at how appropriately, effectively and independently [the child] perform[s] [her] activities compared to the performance of other children [the child's] age who do not have impairments."); 20 C.F.R. § 416.924a(b)(5).

In the only domain at issue in this case—attending and completing tasks—the ALJ is to consider how well the child is able to focus and maintain her attention, and how well she begins, carries through, and finishes her activities, including the pace at which she performs activities and the ease with which she changes them. 20 C.F.R. § 416.926a(h).[3] By the time the child reaches school age (age 6 to attainment of 12), the child should be able to do the following:

> [She should be able to] focus her attention in a variety of situations in order to follow directions, remember and organize [he]r school materials, and complete classroom and homework assignments. [She] should be able to concentrate on details and not make careless mistakes in [he]r work (beyond what would be expected in other children [her] age who do not have impairments). [She] should be able to change [he]r activities or routines without distracting [he]rself or others, and stay on task and in place when appropriate. [She] should be able to sustain [he]r attention well enough to participate in group sports, read by[he]rself, and complete family chores. [She] should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). The following are examples of limited functioning in attending and completing tasks:

> (i) [She is] easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
> (ii) [She is] slow to focus on, or fail to complete activities of interest to [her], e.g., games or art projects.

---

[3] The Regulations state that "[a]ttention involves regulating your levels of alertness and initiating and maintaining concentration. It involves the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance. This means focusing long enough to initiate and complete an activity or task, and changing focus once it is completed. It also means that if you lose or change your focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it." 20 C.F.R. § 416.926a(h)(1)(i).

The Regulations also state that "[a]dequate attention is needed to maintain physical and mental effort and concentration on an activity or task. Adequate attention permits you to think and reflect before starting or deciding to stop an activity. In other words, you are able to look ahead and predict the possible outcomes of your actions before you act. Focusing your attention allows you to attempt tasks at an appropriate pace. It also helps you determine the time needed to finish a task within an appropriate timeframe." 20 C.F.R. § 416.926a(h)(1)(ii).

6

>   (iii) [She is] repeatedly become sidetracked from [he]r activities or [she] frequently interrupt others.
>   (iv) [She is] easily frustrated and give up on tasks, including ones [she is] capable of completing.
>   (v) [She] require[s] extra supervision to keep [her] engaged in an activity.

20 C.F.R. § 416.926a(h)(3). These examples "do not necessarily describe a 'marked' or 'extreme' limitation." *Id.*

## III. Discussion

### A. ALJ's Decision

Following the denial of Plaintiff's application at the initial administrative level, Plaintiff requested an evidentiary hearing before an ALJ, which was held on December 20, 2017. (Tr. 300-02). Plaintiff's mother (who is also her guardian and has sole custody) testified at the hearing. (Tr. 240-75). On June 25, 2018, the ALJ issued his decision. The ALJ found that Plaintiff was born on October 18, 2007, and was a school-age child on March 18, 2016, the date the application was filed. (Tr. 221). The ALJ further found that Plaintiff has not engaged in substantial gainful activity since the application date. *Id.* Next, the ALJ found that Plaintiff has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); adjustment disorder with mixed disturbance; oppositional defiance disorder ("ODD"); parent-child relationship problems; major depressive disorder; and dysregulation disorder. *Id.*

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. *Id.* The ALJ also determined that Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listed impairments. (Tr. 222.) Specifically, the ALJ considered the six functional equivalence domains and determined that Plaintiff had (a) less than marked limitation in acquiring and using information (Tr. 227); (b) less

7

than marked limitation in attending and completing tasks (Tr. 228); (c) marked limitation in interacting and relating with others (Tr. 229); (d) no limitation in moving about or manipulating objects (Tr. 229-30); (e) less than marked limitation in the ability to care for herself (Tr. 230); and (f) no limitation in health and physical well-being (Tr. 231).

With respect to attending and completing tasks with others, the ALJ stated:

> The claimant has less than marked limitation in attending and completing tasks. [Plaintiff]'s teachers all describe difficulties with distractibility affecting [Plaintiff]'s ability to attend and complete tasks. However, Laura Honsom reported that [Plaintiff] would be very high energy to extreme lethargic depending on her medications, indicating that her attention issues could be amendable to proper medication management. She has also shown good response to the structure of the classroom setting. These factors show only less than marked limitation.

(Tr. 228). Therefore, the ALJ found that Plaintiff was not disabled, as defined in the Act, from the date his application was filed. (Tr. 231.).

B.     **Functional Equivalence in Domain of Attending and Completing Tasks**

Plaintiff argues that the ALJ's finding that Plaintiff did not have the functional equivalent of a listed impairment is not supported by substantial evidence because the ALJ erred in finding less than marked limitation in attending and completing tasks. Plaintiff contends that the ALJ erred in relying on an inaccurate understanding of the record to discount Plaintiff's treating psychiatrist, Dr. Naseer.[4] Respondent counters that the ALJ's decision was supported by substantial evidence.

In determining whether the ALJ properly considered the medical opinion evidence, the Court must review the ALJ's discussion of the opinion evidence and, "[g]enerally . . . not decide whether a source's opinion is well founded, but whether the ALJ provided sufficient reasons for rejecting the opinion of a treating source." *Brown v. Colvin*, No. 4:13-CV-01693-SPM, 2014 WL

---

[4] Plaintiff also argues that in determining Plaintiff had less than marked limitation in attending and completing tasks, the ALJ erred in relying on Stacy Michael, Ph.D's opinion; relying on the conclusion that Plaintiff had shown good response to the structure of a classroom and treatment while hospitalized; and finding that Plaintiff's condition would be amenable to proper medication management.

8

2894937, at *5 (E.D. Mo. June 26, 2014) (quoting *May v. Astrue*, No. 09CV03480 NKL, 2010 WL 3257848, at *9 (W.D. Mo. Aug. 16, 2010)). Further, the ALJ may discount a treating physician's opinions if they are inconsistent or contrary to the medical evidence as a whole. *Halverson v. Astrue*, 600 F.3d 922, 929–30 (8th Cir. 2010). However, "[w]hen an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)). *See also* 20 C.F.R. § 416.927(c)(2) (stating that the Social Security Administration "will always give good reasons in [the] notice of determination or decision for the weight [it] gives [the claimant's] treating source's medical opinion"). An ALJ's failure to give reasons for discrediting a treating doctor's opinion requires remand. *See Clover v. Astrue*, No. 4:07–CV–574–DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug.19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's opinion, the district court must remand."); *Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand").

Dr. Naseer completed a Medical Source Statement- Mental on November 7, 2017. (Tr. 1050-51). In the statement, Dr. Naseer indicated Plaintiff's mental diagnoses were ADHD, ODD, and Bipolar Disorder Unspecified. (Tr. 1050). She then provided information about Plaintiff's medications and side effects; that Plaintiff's conditions would cause bad days; and that Plaintiff would be "off task" from symptoms that would interfere with attention. (*Id.*). Dr. Naseer then completed the next portion of the statement by checking the appropriate boxes for a series of questions in several areas such as 1) understanding and memory; 2) sustained concentration and persistence; 3) social interaction; and 4) adaption. (Tr. 1050-51). Dr. Naseer did not circle any of the options listed when asked what factors the opinion provided was based on. (Tr. 1051).

9

In the decision, the ALJ gave "some weight" to Dr. Naseer's opinion. The ALJ concluded that:

> Some weight is given to the opinion of [Dr.] Naseer. She was a treating source; however, she only had a 6[-]month treatment history with [Plaintiff] and her opinion is dated over a year after her last documented visit with [Plaintiff]. Her opinion also does not reference any specific examination findings in support. For these reasons, it is given only some weight.

(Tr. 226). As Plaintiff points out, and the Commissioner concedes, the ALJ's conclusion is not supported by the records. Instead, the records show that Dr. Naseer continuously saw Plaintiff over the course of 2016 and 2017. (Tr. 650-53, 654-57, 658-61, 668-71, 812-15, 848-52, 864-67, 906-09, 917-21, 934-37, 953-56, 973-76, 1000-03, 1012-15). Importantly, the ALJ notes that Dr. Naseer issued her opinion "over a year after her last documented visit with" Plaintiff. This is not accurate. Dr. Naseer saw Plaintiff in September 2017, only two months before her November 2017 opinion. (Tr. 812-15, 1051). Although not available to the ALJ, the records supplied after the ALJ's decision also show that Dr. Naseer saw Plaintiff in October 2017, only one week before Dr. Naseer completed the Medical Source Statement- Mental opinion. (Tr. 139-42).

Because it appears the ALJ was mistaken about Dr. Naseer's treating relationship with Plaintiff, the Court finds that the reasons provided by the ALJ for discounting Dr. Naseer's opinion are not supported by substantial evidence. The Court takes no position on which party's evidence regarding the supportability of Dr. Naseer's opinion is more persuasive. The regulations and the case law make clear that the question of what weight to give to a treating psychiatrist's opinion in light of the evidence in the record is for the ALJ, not the Court, to decide.

**IV.   Conclusion**

The Court finds that this case should be remanded to allow the ALJ the opportunity to consider Plaintiff's treating psychiatrist opinion, Dr. Naseer. Upon reconsideration of appropriate

evidence, the ALJ may well determine that Plaintiff is not disabled. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint, Brief, and Reply Brief in Support of Complaint is **GRANTED** in part and **DENIED** in part. (Docs. 1, 15, 19).

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of April, 2022.